May it please the Court, I'd like to reserve three minutes for rebuttal. You keep track of time. Thank you. Lewis Gordon on behalf of the petitioner. The most troubling aspect of this case is that the Department of Homeland Security's initial attorney on the motion to reopen did not oppose reopening this case. And not only did the attorney not oppose, she specifically sent a response in, and that's at page 45 in the record, noting no opposition to the motion to reopen. And in that motion to reopen, the petitioner complied with the requirements under H.C.F.R. 103.2. There was an affidavit, there was evidence, there was an application for relief. But the I.J. then asked for standards which were beyond what's contained in the regulation, and he denied the motion to reopen. What additional standard was enforced? Well, the I.J. said that the petitioner should submit a police report to corroborate his injuries. And the I.J. said that without it, he might assume that the petitioner was the aggressor in the altercation. But the BIA rejected that. That's clear. It's perfectly clear the BIA rejected that, so I don't know why we care about the I.J. making that comment. Well, I think it colors the I.J.'s overall analysis of the motion to reopen. Well, you know, that's like saying it doesn't matter if the BIA rejects what the I.J. said wrong. We therefore consider the whole thing wrong because it might have colored it, whatever color means. The I.J. did say that the injury, he was not convinced the injuries were so severe that they prevented him from appearing in court. That's the bottom line. Well. Why does the evidence compel a finding to the contrary? Okay. The petitioner submitted a declaration stating that he was beaten, he was in a lot of pain, he was unable to come to court. He, at that point in time, was pro se. And in the previous argument, counsel for the Department of Homeland Security noted a case called Solis-Castellano. That case also stands for the proposition that the board must accept the facts in an affidavit unless they're inherently unbelievable. Now, the petitioner sent by FedEx a delivery to the court. It arrived at the court on the day of the hearing. He had a detailed affidavit. His wife sent an affidavit. There was a picture of the Santa Barbara paper taken on that day. Given in the context of he as a pro se applicant married. And he did submit some medical information. And he did submit medical information in the motion to reopen. It seems inherently believable. And it was so inherently believable that the DHS attorney agreed that the case should be reopened. He lives in Santa Barbara. Where was the court where he was supposed to appear? It was in Los Angeles. So except for driving from Santa Barbara to Los Angeles, which is what he couldn't do, the only way he – and this happened, what, two days before? Right. So by sending it by FedEx, is that the fastest he could have gotten the information there in writing? I believe that's the fastest way he would – I don't assume he would know to send a courier. So. The problem is how – what do we have that tells us that because he's hurting, no doubt he's hurting, he couldn't come to court? I understand he didn't go to court. And the picture doesn't really tell us much. No. It doesn't tell me much. Of course, it's such a bad copy, it's hard to tell what it's supposed to tell. There's a better. I've seen, I think, all the pictures in the record, and none of them seem to be that wonderful. But anyway, why does it tell us that he could not come to court? Nobody could drive in there. He couldn't get to court. Well, there is evidence from the doctor that he went to, along with the clinic notes stating that he had come in. He states that he was in a lot of pain and that it made it difficult. And given the concatenation of those circumstances, I think it's believable that he couldn't make it to court on that day. Now, remember, he's a pro se person. He's not aware of the immigration case law going back and forth on that. Well, I don't know what difference that makes, frankly. I mean, I heard that in the last case, too. As I recall, it's not a criminal case where you're entitled to appointment of counsel. You can be pro se unless you can get counsel, et cetera, et cetera. So the fact he's pro se, I don't know why that short-circuits the regulations, the requirements, what the standards are. I don't quite understand that. Okay. He complied with, first of all, he sent his FedEx in. He tried to do the court. He made a good-faith effort to try to tell the court, I'm in bad shape, I can't make it to court. He then filed the motion to reopen, and he complied with all the requirements. I don't see how he's short-circuiting anything. I simply think that it rises to. I didn't say he was short-circuiting. I'm saying counsel's argument is because he's pro se and didn't know that he had to have, say, a severe condition, we should take that into account. I'm just suggesting that I don't think that argument works. It had nothing to do with what he was doing. It doesn't look like he was short-circuiting anything. The question is, though, on what he did submit, do the facts compel determination that he had a condition that was so serious that he could not come? Was it serious illness or death, but nothing less than that? Well, I think it's serious illness. We have the precedent that if it's inherently believable, if there's no evidence to the contrary, we believe it. Neither the IJ nor the board has ever said they don't believe he had those injuries. But there's two steps, aren't there? Step one, are you injured? Step two, did that prevent you from coming to court? I could have a hangnail and prove it and everybody couldn't believe it, but they wouldn't think that stopped me from coming to court. That is the second step in talking about it. I understand. But if we look at what he says in his affidavit, he goes through a long list of everything that he has. It wasn't, I simply didn't feel well, I got punched, I couldn't come to court. He said I was having a lot of difficulty, my eyes were hurting very badly, my face was hurting, my body was hurting. And that's the point. I would think that a reasonable person would think those injuries would be sufficient not to come to court. You said he was hardly moved from the pain is what he said. He couldn't open his right eye. If you're going to save time, you have no choice. Yes, Your Honor. Thank you very much. Thank you. Good morning again, Court Larson, for the Attorney General. Before I talk about the actual facts in the case, I want to just emphasize that this court has to uphold the board's decision unless it was an abuse of discretion. But this case seems to have everything in it that you said the other case didn't have. Say again, ma'am? This case seems to have everything in it that you said the other case didn't have. This thing, this case does have. The guy, they made a really, as good an effort as probably they could have made to get the information to the court in time. They submitted medical evidence. They submitted pictures. They submitted a very specific declaration. The declaration says that he could hardly move from the pain. If someone's going to choose to disbelieve that, don't they at least have to have a hearing? Well, it's no. Why not? Because this is an in absentia case. I understand it's an absentia case. And he presented evidence that he could hardly move from the pain. He has the ability to take, if somebody takes a Polaroid picture of him, he has the ability to formulate the document that's going to be sent in. He takes it down to FedEx himself. He's got that ability, but he doesn't have the ability to get out of bed. Moreover, the time that he goes to see the doctors, not when it happened, not the day after it happened. Well, that's almost surprising. I mean, if somebody is injured, to wait a couple days to see if it goes down and gets better, isn't so bizarre. Would it go to the severity of it, though? And there is a difference between going to FedEx and driving 150 miles around. Would it go to the severity of it, though? I'm sorry? If a person didn't go see a doctor right away, granted, it doesn't say the person was injured or not, but would it at least go to the severity of it? Not necessarily. I mean, the severity has to do with the question of whether he can go drive a distance and go someplace. Or have somebody driving him. I mean, I guess I'm speaking from personal experience, but I know I've sometimes had serious injuries. Everything gets black and blue. You feel horrible. You can't walk. But you say it's probably going to get better. I'll wait a couple days and see how it goes. It went pretty quick. I agree that there are facts in this case that are more, have more to go in the Petitioner's favor. I agree with that. However, again, it's an interstitial case where the person was supposed to show up for a hearing. They didn't. Is it unusual for an IJ not to reopen when there's been a specific non-opposition? You know what? I don't have the statistics on that. And I think that the, you know, for the final arbitrator is the immigration judge at that level, and then it goes to the board. So not only did the immigration judge believe that the Petitioner had met exceptional circumstances, so did the board. How do we know, by the way, that he's the one who went to FedEx? I'm sorry, ma'am? How do we know that he's the one who went to FedEx? It's, again, by looking at the statements that were made. He says that I was beaten and he had it filed for him. No, I'm asking why you say he went to FedEx. How do you know that? You know what? I think I saw it in the administrative record. I might be wrong on that. And when Petitioner's counsel comes up, he might address that to you. But it went to FedEx. If he didn't get it there, somebody got it there for him. If he couldn't have driven, somebody could have driven him to the immigration hearing. Here's another point. That's why I asked the distance. It seems to me to be of some pertinence, that it wasn't around the corner. Yes, ma'am. I don't think that the court should go that deep into it because, again, it's the abuse of discretion. If we said it's 50 miles away, then it would have been okay. If it was 150 miles away, then it would have been exceptional circumstances. It's just an unusual circumstance where the DHS person agrees that this should be reopened and the IJ says no. Is it? I don't think we have those facts in front of us, ma'am. The other point that needs to be brought up here is that the amount of information and evidence that was offered, this case is even more towards the point of what can be put in front of the board after the immigration judges decided the case. More information was put in front of the board. And I want to backtrack a little bit, too, speaking of the severity of the injuries that occurred, the medical documentation that he did submit, the medical documentation. I'm sorry, ma'am. Speaking of the severities that the petitioner claimed that he had, you stated that he had a medical document. He did have a medical document. But the only thing that medical document said is that he was seen for an eye injury. It didn't talk about the severity of that eye injury. It just stated that he was seen for an eye injury. Again, if you go back to Celis Castellano, this court has held you've got to show the severity, not just that you went to a doctor, but you've got to say something about the severity of it. What was submitted? Was there something submitted at the BIA stage? There was. There was another, I believe, there was a couple of documents. Oops, I got that wrong. There was more medical statements, at least one more medical statement that was submitted. Yeah, and there was one more medical statement that was submitted. From the same doctor? Yes, sir. Just the same? Yes, sir. Just more detail on the eye injury, is that right? I wouldn't even say it was more detail. It was more detail as far as the timing of it versus the actual eye injury itself. Basically, most of the information was submitted before the IJ. Yes, ma'am. But, again, the Board can't consider this new. It's not a fact finder. It's not a fact finder. So I'm not understanding that part. I understand the Board's not a fact finder, but there was a great deal of evidence submitted before the IJ. Yes, ma'am. Okay. So why is the issue in the other case pertinent here? Just forget about what was presented to the BIA and just look at what was presented to the IJ. Look at both of what was presented to the IJ. I guess if you would look at both of them, severity is the question. There's two points of it. One is credibility and the other one is severity. Can you tell me where in the record the additional material is? Where in the record is the additional material that was sent to the BIA? I would say donors, sorry. Look around page 13. Close to that. Exactly. On page 13, group probably 17. All there is is a medical record, additional medical record, period. And all it does is provide the notes for the letter that he wrote. It's kind of a substantiation of the fact that he actually did go see a doctor, but, again, it doesn't go to severity of the injury at all. Moreover, and, again, the IJ did state concerning, there's a credibility issue here. Again, two points. The boards sat back and said, wait a minute, I don't agree with your speculation that this person could have self-inflicted these or was part of this process. We're going to, I'm looking at the facts and I'm analyzing the facts and I don't believe that. But what is the pertinence of, they did say rely on the fact that he didn't have a police report. What is the pertinence of that? It's corroboration. If you're going to present a case, you have to have corroboration. Well, suppose he wasn't beaten up. Suppose he fell down the stairs. What difference would that make if the same thing happened to him? Or suppose he did instigate the fight. What difference would that make? Therein lies the issue. Because under the regulations, it states that the circumstances, the exceptional circumstances, you couldn't have caused those exceptional circumstances. So if he had started the fight, if he had started the fight, then those wouldn't be exceptional circumstances. What if a person takes a hammer and hits his hand and says, I can't go through? That's different. I would argue that starting a fight and being the protagonist in a fight is also making yourself not available to the court. But the interesting thing about it is, is that, again, the IJ and the board both found two points. One, that it wasn't severe enough. And two, that they didn't believe the petitioner. So we have to look at both of those. There's a lot of things that the court has to overcome in order to find that abusive discretion. However, we agree that the respondent could have corroborated a criminal attack through a police report. More importantly, we agree that the respondent has failed to substantiate his injuries were severe enough to excuse his failure for appearing. Absent abuse of discretion, arbitrary, capricious finding. Not there. This court has to uphold the case. Subject to questions, that concludes. Thank you very much, counsel. Okay. There was new evidence that was submitted to the BIA at page 32, which is the petitioner's explanation as to why he did not provide a police report. And he noted that he had had. What is your view of the pertinence of either the police report or the question of whether or not he instigated the fight? First of all, there's different levels of fights. There's a case that I argued about two years ago, Povuka-Moravec. That's a precedent in the circuit, which notes that someone in self-defense could still apply for asylum. So you'd have to look at the overall circumstances of the fight. I mean, if he bullied someone and caused the fight, then maybe he wouldn't qualify. But if he was the initial aggressor for a minor reason, then we're getting into basic criminal law definitions, he might still be eligible. But aside from that, he was not the aggressor in the fight. He was attacked. That's clear from his declaration. A police report would seem to be irrelevant to the issue as to whether his injuries were severe enough. He has the declaration. He has the doctor's letter. I assume that in these in absentia motions to reopen, a I.J., if he's concerned about veracity, could hold a hearing. Yes, he could. He could set a hearing on reopening. He could request briefing. I don't remember whether the – was the information here just submitted under penalty of perjury? Yes. Before the I.J.? The declaration where he talked about what happened to him and the fact that he was attacked and so on. Yes, Your Honor, at page 91. So can he – can the I.J. simply disbelieve that with not having a hearing and making findings on a record? That's correct, the I.J. I'm asking you. I don't know what's correct. I'm asking the question. Is there any case law about whether if somebody submits an affidavit saying this is what happened to me and there's nothing to the contrary, can the I.J. on the cold record make an adverse credibility finding, which is what happened here? I don't know the answer to that question. My understanding is that there's no case law that would require him to have a hearing based on those declarations. However, he could. And I did want to say that as far as abuse of discretion goes, I don't believe that a reasonable fact finder on these facts can look at this and say that the case should not have been reopened. I think that that – And one last question and then we're out of time. Is there anything in the record with regard to whether he took it to the Federal Express or someone else did? There is a receipt in the record from the Federal Express. I believe it has his signature on it. Okay. Is that proof he took it to Federal Express as opposed to Federal Express came and picked it up at his house? That I don't know. But I think it's a red herring because the Federal Express is very local. We're talking about making a trip from Santa Barbara to Los Angeles. He could get out of bed momentarily to go to a FedEx drop off and deliver a package. If you thought you had to do that to preserve your rights, it would seem a much less of a burden than to go in pain all the way to Los Angeles. What kind of a receipt is this? If he drops it in the drop box, he's not going to – I think he went to a – some type of mailing service. And that's why he signed it. Okay. Thank you very much, counsel. Thank you. We thank counsel for their arguments. The case Carl Silvis v. Gonzales is submitting. Submitted.
judges: Canby, Fernandez, Berzon